[No. 1744.]

TONOPAH LUMBER COMPANY, A CORPORATION, RESPONDENT, *v.* M. M. RILEY AND E. MARKS, COPARTNERS UNDER THE FIRM NAME OF THE CASINO ATHLETIC CLUB, APPELLANTS.

1. PLEADING — DENIAL OF GENUINENESS OF WRITTEN INSTRUMENT — ANSWER CONTAINING COPY OF INSTRUMENT — AFFIDAVIT. Under civil practice act, sec. 54 (Comp. Laws, 3149), providing that when a defense to an action is founded upon a written instrument, and a copy thereof is contained in the answer, the genuineness and due execution of such instrument shall be deemed admitted, unless plaintiff files an affidavit denying the same, where a contract set up in defendant's answer did not appear upon its face to have ever been signed or executed by either of the parties, and did not purport to be a completed instrument, plaintiff was not required to file an affidavit denying its execution and genuineness.

2. WITNESSES — IMPEACHMENT — INCONSISTENT STATEMENTS — FOUNDATION OF IMPEACHING EVIDENCE. In an action for the price of lumber, questions asked the president of plaintiff corporation relative to a former action of replevin to recover the lumber, to impeach his testimony because of certain declarations in the replevin pleadings, were properly excluded, where such pleadings were not then exhibited to the witness, and subsequently the papers in the replevin suit were introduced by defendants in evidence, from which it appeared that they were verified by another, and that the witness was at the time out of the state.

3. SAME — EXPLANATION OF IMPEACHING EVIDENCE. In an action for the price of lumber, where the complaint and proceedings in a replevin suit were offered as impeaching evidence, a witness is properly allowed to explain his reasons for verifying the complaint in the replevin suit, by stating that it was made because of a conversation he had with plaintiff's president relative to the contract, and that the verification was made and the suit brought on the advice of counsel, as it was proper to relate the circumstances under which the alleged impeaching document was executed.

4. Same. In an action for the price of lumber furnished defendants, evidence of a contract between a witness and defendants, offered for the purpose of contradicting the witness, was properly excluded, where the witness's attention was not called to the contract, while testifying, and it did not appear that his testimony was inconsistent with the recitals in the agreement; the contract being otherwise inadmissible as containing self-serving declarations.

5. Evidence—Documentary Evidence—Authentication—Execution. In an action for the price of lumber sold defendants, they offered in evidence a document, a copy of which was attached to their answer and alleged to be the contract entered into between the parties, the document being unsigned, and containing a provision that a written guaranty was to be attached thereto and made a part of the contract. Witnesses for defendant were permitted to testify that such a contract was made by the parties, and the court offered to allow the contract to be admitted for the purpose of illustrating the testimony and showing the negotiations; but defendants insisted that it should be admitted as evidence of the contract which was made, and not for any other purpose. *Held*, that the court's offer to admit the alleged contract to explain the testimony was as liberal as defendants were entitled to.

6. Appeal and Error—Exceptions—Sufficiency. To entitle a party to have instructions reviewed, the particular error in each instruction must be pointed out in the exception, and exceptions taken to instructions on the ground that they were improper, and did not state the law, and were not applicable to the case, and were irrelevant, were too general for consideration on appeal, but an objection to a specified instruction that the jury were instructed on a matter of fact was properly taken.

7. Same—Review—Verdict on Conflicting Evidence. Where there is a substantial conflict in the evidence, the supreme court will not disturb the verdict of the jury.

Appeal from the District Court of the Fifth Judicial District of the State of Nevada, Nye County; *J. P. O'Brien*, Judge.

Action by the Tonopah Lumber Company, a corporation, against M. M. Riley and another, copartners under the name of the Casino Athletic Club. From a judgment for plaintiff and an order denying a motion for a new trial, defendants appeal. **Affirmed.**

The facts sufficiently appear in the opinion.

*Jas. F. Dennis* and *F. K. Murphy*, for Appellants:

I. The carpenters' union was in no way a party to said contract, and the conversation had between the carpenters, union, and which the witness, Revert, testified to, was incompetent for the reason that it was hearsay, and irrelevant

because it did not pertain to the erection of the prize-fight arena.

II.   The court erred in stating that Murphy was not the agent of plaintiff, instructed the jury upon an issuable fact, which later on in the course of the trial the court emphasizes by then and there declaring in the presence of the jury that the evidence shows that Murphy was the agent of the defendants, thereby expressing a definite opinion as to the weight of the testimony upon a fact in issue, for it was shown by many of the witnesses on the part of the defendants, to wit, Marks, Riley, Noonan, Smith, and others, that Murphy was the agent of the plaintiff until after the breach of the contract which occurred some time about the 15th day of December, 1906. Thus the court, in making the remark complained of, violated the constitutional provision hereinbefore referred to, and not only expressed to the jury an opinion upon the weight of the evidence already given but a verbal instruction.   It is evident that the opinion of the court could be as effectively conveyed to the jury by expressing it in their hearing, while ruling upon an objection to evidence, as by embodying it in what purports to be a declaration of the law for their instruction.   (*State* v. *Harkins*, 7 Nev. 377; *State* v. *Ah Tong*, 7 Nev. 148; *State* v. *Duffy*, 6 Nev. 138; *State* v. *Tickel*, 13 Nev. 502; *State* v. *McGinnis*, 5 Nev. 237.)

III.   The defendants offered to contradict the witness, Murphy, while upon cross-examination, with the written contract, which the court refused to allow, even after the witness had testified that it was his signature attached to the contract.

IV.   The instruction of the court with reference to the contract dated November 28, 1906, was a direct instruction to the jury as to the weight of the evidence.   The court took the particular pains to assert that the contract had not been proven, although various witnesses, inclusive of Revert, had testified that it was entered into and acted upon to and including the 15th day of December, 1906, and thus again did the court override the constitutional provisions hereinbefore referred to, and take away from the jury the right to pass upon an issuable fact, which was the essence of the con-

troversy they were called upon to determine. By its action the court, in effect, instructed the jury to bring in a verdict for the plaintiff.

*P. E. Keeler*, for Respondent:

I. The alleged contract did not purport to be executed or to be a completed instrument, and for that reason no denial of execution or genuineness as a written contract was necessary or proper. (*Peoria M. & F. Ins. Co.* v. *Walser*, 22 Ind. 73; *Kelley* v. *Paul*, 3 Gratt. 191; *Washington* v. *Hobart*, 17 Kan. 275; *Sheperd* v. *Frys*, 3 Gratt. 442.) Under a statute identical with ours, the Supreme Court of Idaho used the following language: "Genuineness of an instrument goes to the question of its having been the act of the party just as represented, or in other words, that the signature is not spurious. 'Due execution' goes to the manner and form of its execution according to the laws and customs of a country by a person competent to execute it." (*Cox* v. *N. W. Stage Co.*, 1 Idaho, 376.) "An instrument is genuine which is in fact what it purports to be; and it is only executed when the parties thereto have signed, sealed and delivered it in the mode prescribed by law." (*Sloan* v. *Diggins*, 49 Cal. 38; *Re Garcelon*, 104 Cal. 570; *Carpenter* v. *Shinners*, 108 Cal. 359; *Rosenthal* v. *Merced Bank*, 110 Cal. 198.) All the allegations contained in the counterclaim aside from the document itself are deemed controverted. (Comp. Laws, 3160; *Cahill* v. *Hirschman*, 6 Nev. 57.)

II. There can be no force in the contentions of defendants that said agreement was "executed by delivering the same to the Nye and Ormsby County Bank," as there was absolutely no proof whatever of any such understanding or agreement, nor was the bank shown in any way to have been a representative or agent of either of the parties for any such purpose. Neither is there any evidence in the record that the parties intended such unsigned memorandum to take effect as a contract without signing.

III. The court did not err in excluding the alleged contract between J. B. Murphy and the defendants, executed on the 18th day of December, 1906, and after this action was

commenced. It must be admitted by the defendants in this case that, at that time, Murphy was not the agent of the Tonopah Lumber Company, and that his acts and declarations could not be binding upon the plaintiff. An inspection of this document will show that numerous "whereases" and preliminary recitals were made in this document which were entirely unnecessary in an ordinary contract employing a superintendent; and it is entirely clear that these declarations of fact were incorporated in this agreement solely for the purpose of being used as evidence in this litigation which had already been commenced. As bearing upon the truth of these recitals, the court should also remember that some six days before the signing of this contract the plaintiff in this case had instituted an attachment proceeding against the witness, J. B. Murphy, for a large amount. As I understand counsel, this evidence was offered as impeaching evidence containing statements of fact contrary to those testified to by Murphy upon the trial, but this document was never exhibited to Murphy while upon the stand; nor was he interrogated as to the alleged contradictory statements. Under these circumstances, the evidence is inadmissible. (*Rice* v. *Cunningham*, 29 Cal. 492; 1 Greenl. Ev. 462.)

IV. In offering the signed writing, defendants' counsel did not claim that it was a contract, but offered it "for the purpose of proving a contract," and again, "we offer it as evidence of the contract." Relying on a written contract, as they did in their pleading, the defendants were not entitled to offer the paper as a parol agreement, which was what they did, merely offering it as evidence of an agreement.

V. In order to entitle defendants to have reviewed the instructions of the court they must have pointed out in their exceptions the particular portion of the instructions which they claim to be erroneous. (*McGurn* v. *McInnis*, 24 Nev. 370; *Lobdell* v. *Hall*, 3 Nev. 520; *Sharon* v. *Minnock*, 6 Nev. 382.) The exceptions were too general to justify this court in reviewing any portion of the entire charge, and upon that ground plaintiff interposes the preliminary objections to such consideration. (46 Cent. Dig. col. 1787, "Trial," sec. 689.)

VI. In the case of *State* v. *Watkins*, 11 Nev. 37, the court

uses the following language: "In order to save the court and counsel from thus acting at cross purposes, it is well for the court to explain its ruling, care being taken in so doing not to intrench upon the province of the jury. It is not intrenching upon the province of the jury to say that evidence has been given tending to establish a fact which it clearly does not tend to establish."

*Per Curiam:*

This is an action brought by the plaintiff against the defendants to recover for lumber and building material sold and delivered to defendants by plaintiff for the sum of $14,980.09, the payment of which it is alleged was to be guaranteed by the Nye and Ormsby County Bank, and that the lumber and building material was to be paid for as follows: One-half of all the lumber delivered to defendants before December 15, 1906, was to be paid in cash on that date, and the balance for the lumber used in the completion of the building known as the "fight arena" was to be paid on January 2, 1907—and it is alleged that the defendants failed and refused to comply with the terms of the contract on December 15, 1906. For the failure by defendants to comply with the provisions of said contract, plaintiff elected to rescind the contract and sue for the reasonable value of the lumber delivered thereunder. In their answer defendants deny all the allegations of the amended complaint, and by way of further answer, counterclaim, and cross-complaint defendants allege that the parties hereto entered into a written contract to build a fight arena, a copy of which alleged written contract they attach to their answer, and under which they claim affirmative relief. The cause was tried with a jury, and a verdict rendered in favor of plaintiff for the full amount sued for, and judgment entered thereon accordingly. From the judgment and an order denying a motion for new trial, defendants appeal.

1. The first error assigned is in the overruling of defendants' objection to the introduction of oral testimony to support the cause of action set forth in plaintiff's complaint for the reason that plaintiff had filed no affidavit denying the

due execution and genuineness of the alleged written contract set up in defendants' answer and counterclaim. Section 54 of the civil practice act (Comp. Laws, 3149) provides: "When the defense to an action is founded upon a written instrument, and a copy thereof is contained in the answer, or a copy is annexed thereto, the genuineness and due execution of such instrument shall be deemed admitted, unless the plaintiff file with the clerk, five days after the service of the answer, an affidavit denying the same." The alleged contract set up in defendants' answer did not appear upon its face to have ever been signed or executed by either of the parties to the action, and did not purport to be a completed instrument. "An instrument is genuine which is in fact what it purports to be; and it is only executed when the parties thereto have signed, sealed, and delivered it in the mode presented by law." (*Sloan* v. *Diggins*, 49 Cal. 38; *In re Garcelon's Estate*, 104 Cal. 570, 38 Pac. 414, 32 L. R. A. 595, 43 L. R. A. 134; *Rosenthal* v. *Merced Bank*, 110 Cal. 198, 42 Pac. 640.) The Supreme Court of Idaho, considering the effect of a similar statute, say: "The due execution of an instrument goes to the manner and form of its execution according to the laws and customs of the county by a person competent to execute it. The genuineness of an instrument evidently goes to the question of its having been the act of the party just as represented, or, in other words, that the signature is not spurious, and that nothing has been added to it, or taken away from it, which would lay the party changing the instrument or signing the name of the person liable for forgery." (*Cox* v. *N. W. Stage Co.*, 1 Idaho, 376, 380.) The court did not err in overruling defendants' objection.

2. Error is assigned in the sustaining of an objection to a question asked the witness Revert, president of the plaintiff corporation, relative to a former action having been commenced in replevin to recover certain lumber delivered to the building. It was contended that the evidence was of an impeaching nature, presumably because of some written declarations contained in the replevin pleadings. The plead-

ings and records were not at the time exhibited to the witness. Subsequently the papers in the replevin suit were introduced by the defendants in evidence, from which it appeared they were verified by one A. J. Crocker, and that the witness Revert was at the time absent from the state. The ruling of the court was not error.

3. Error is assigned in the refusal of the court to strike out a portion of the answer of the witness A. J. Crocker wherein he was explaining the reason he verified the complaint in the replevin suit. The witness stated that it was made because of a conversation he had had with Revert, the president of the company, relative to the proposed original contract, which conversation he detailed, and that it was upon advice of counsel. Defendants' counsel objected to this portion of the answer upon the ground that it was a hearsay declaration tending to excuse the plaintiff for a seeming inconsistent act with reference to the subject-matter of the action. We think the court did not not err in its ruling. The complaint and proceedings in the replevin action were offered in the nature of impeaching evidence. Under such circumstances the witness may be permitted to relate the circumstances under which the alleged impeaching document was executed. Wigmore on Evidence, 1044, says: "In accordance with the logical principle of relevancy, the impeached witness may always endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances would naturally remove it. The contradictory statement indicates on its face that the witness has been of two minds on the subject, and therefore that there has been some defect of intelligence, honesty, or impartiality on his part; and it is conceivable that the inconsistency of the statements themselves may turn out to be superficial only, or that the error may have been based, not on dishonesty or poor memory, but upon a temporary misunderstanding. To this end it is both logical and just that the explanatory circumstances, if any, should be received." See, also, *Ferris* v. *Hard*, 135 N. Y. 354, 32 N. E. 129; *State* v. *Howard*, 43 Or. 166, 72 Pac. 880; *State* v. *Reed*, 62 Me. 146; *Stoudt* v. *Shepherd*, 73 Mich.

588, 41 N. W. 696; *Dole* v. *Wooldredge*, 142 Mass. 161, 7 N. E. 832; *Hoggan* v. *Cahoon*, 31 Utah, 172, 87 Pac. 164, 2 Elliott on Ev. (2d ed.) 931; 1 Greenleaf (16th ed.) 462.

4. Error is assigned in the refusal of the court to admit in evidence a certain contract entered into between the witness J. B. Murphy and the defendants on the 18th of December, 1906, offered upon the examination of defendant Riley. As the plaintiff corporation was not a party to this contract, its recitals could in no way be binding upon it. It was contended, however, that it was admissible for the purpose of contradicting the witness J. B. Murphy. The attention of the witness Murphy while on the stand was not called to this contract, nor was he asked with regard to any statements therein that were of a contradictory nature to his testimony. Besides it does not appear that the testimony of the witness Murphy was inconsistent with the recitals in the agreement. The contract offered in evidence contained numerous recitals that were self-serving declarations so far as defendants were concerned. Unless it clearly appeared that it was admissible for the purpose of impeaching or contradicting a witness, it would have been highly improper to have admitted it. No showing having been made to authorize its admission for purposes of impeachment, the court did not err in excluding it.

5. Error is assigned in the refusal of the court to admit in evidence the unsigned document, a copy of which was attached to defendants' answer, and alleged to be the contract entered into between the parties, for the violation of which defendants claimed damages. The document was not only unsigned, but a provision was contained therein that the written guaranty of the Nye and Ormsby County Bank that defendants should comply with the terms of the contract was to be attached and made a part thereof. This was a very essential part of the contract, if it was a contract, according to its terms, and was lacking. Counsel for defendants claimed, however, that the parties had satisfactorily settled the question of guaranty in another way, and that this portion of the contract was in effect changed by oral agreement. Witnesses upon the part of the defendant had been permitted to testify that such contract was entered into between the

parties. The court offered to allow the document to be admitted in evidence "for the purpose of illustrating the testimony and showing the negotiations." Counsel for defendants were unwilling that it go in under the limitations suggested by the court, and insisted on the offer that it be admitted "as evidence of the contract which was entered into, not for any other purpose." As the document was unsigned and incomplete according to its terms, in the other respect mentioned, and the evidence was conflicting upon the question of whether it was in fact the intention of the parties to enter into a contract containing the terms and conditions of this unexecuted instrument, we think the offer of the court was as liberal as defendants were entitled to, and we find no error in the court's ruling.

6. Counsel for appellant assigns error in the giving of certain instructions to the jury. The only exception taken to the instructions given is in the following language: "Mr. Murphy: If your honor please, I would like to enter an exception to the giving of the instructions on the ground that the instructions given by the court of its own motion are improper, and do not state the law, and are not applicable to this case; and, in reference to the instructions offered and given on the part of the plaintiff, we take an exception to the giving of those instructions on the ground they do not contain the law, and are improper and irrelevant, and particularly with reference to the first instruction on the ground that it instructs the jury on a matter of fact." With the possible exception of the "first instruction" mentioned, the exception is too general to be availing. In order to entitle a party to an action to have the instructions reviewed, the particular error in each instruction complained of must be pointed out in the exception. This is required in order that the court's attention may be specifically called to the alleged error, and that it may, if deemed erroneous, be corrected in time. (*McGurn* v. *McInnis*, 24 Nev. 370; *Lobdell* v. *Hall*, 3 Nev. 520; *Sharon* v. *Minnock*, 6 Nev. 382; *Bard* v. *Elston*, 31 Kan. 274, 1 Pac. 565; *Eldred* v. *County*, 33 Wis. 133; *Burnstein* v. *Downs*, 112 Cal. 197, 44 Pac. 557; *Holman* v. *Boston, etc., Co.*, 8 Colo. App. 282, 45 Pac. 519.) The only instruction

that might be deemed sufficiently excepted to is, we think, not objectionable as instructing the jury upon a matter of fact.

7. The assignment of error that the verdict of the jury is contrary to the evidence is, we think, not well taken. The most that can be said is that the evidence is conflicting. This court has repeatedly held that, where there is a substantial conflict in the evidence, it will not disturb the verdict of the jury or decision of the court.

The record contains a number of other minor assignments of error, in which we find no merit and deem unnecessary to consider at length.

No error appearing in the record, the judgment and order of the trial is confirmed, and it is so ordered.